United States District Court
Southern District of Texas
**ENTERED**
July 30, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **NAJIBULLAH SAFI,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:26-cv-00531** |
| | § | |
| **TODD LYONS, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Verified Amended Petition for a Writ of Habeas Corpus, (Dkt. No. 4), and Respondents' Motion for Summary Judgment, (Dkt. No. 7). Petitioner alleges that his continued detention in federal immigration custody is unconstitutional. The primary issue before the Court is whether there is a significant likelihood that Petitioner's removal from the United States will occur in the reasonably foreseeable future. For the reasons discussed below, the motion for summary judgment will be denied, and the petition will be granted.

## I. BACKGROUND

Petitioner is a citizen of Afghanistan currently detained in federal immigration custody. (Dkt. No. 7-2 at 1).[1] On January 3, 2025, Petitioner attempted to enter the United States without inspection, and he was apprehended by immigration officials. (*Id.*). He was processed for expedited removal. (*Id.*). Petitioner expressed a fear of returning to Afghanistan, which was referred to United States Citizenship and Immigration Services (USCIS). (*Id.* at 2). On February 26, 2025, USCIS issued a negative credible fear determination. (*Id.*). USCIS's decision was reviewed by an Immigration Judge (IJ) and subsequently vacated. (*Id.*).

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

On March 10, 2025, Petitioner was served a Notice to Appear in Immigration Court because the IJ vacated the negative credible fear decision, essentially finding that Petitioner had a credible fear. (*See id.*). On August 29, 2025, an IJ ultimately denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) and ordered him removed to Afghanistan. (*Id.*; Dkt. No. 7-1). Petitioner and the Department of Homeland Security (DHS) waived appeal of the decision, making the order of removal final on that date. (Dkt. No. 7-1 at 4); *see also* 8 C.F.R. § 1241.1.

Petitioner remains detained in the United States despite his final order of removal, which was final in August 2025. According to Supervisory Detention and Deportation Officer Alfonso Bustamante's declaration attached to Respondents' motion for summary judgment, Enforcement and Removal Operations (ERO) has sent numerous requests for travel documents necessary to effectuate Petitioner's removal to Afghanistan:

> On November 17, 2025, ERO emailed the desk deportation officer requesting a transport letter for Petitioner.
>
> On December 15, 2025, ERO sent the travel letter request for Petitioner to the United States Mission Afghanistan in Doha for action.
>
> On January 11, 2026, ERO emailed the deportation officer for an update on Petitioner's travel letter request.
>
> On March 2, 2026, ERO emailed Petitioner's travel document request packet to the attaché for review and requested an update on flights to Afghanistan.
>
> On March 24, 2026, ERO sent Petitioner's travel document request to the desk deportation officer for review.

(Dkt. No. 7-2 at 2–3).

On April 15, 2026, Petitioner filed a petition for a writ of habeas corpus, seeking review of the constitutionality of his detention. Petitioner asserts two claims: (1) his detention violates his Substantive Due Process rights under the Fifth Amendment because his prolonged detention is not reasonably related to a legitimate government interest; and (2) his detention violates 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*

because Petitioner's detention exceeds the six-month period of reasonable detention and Respondents cannot demonstrate legitimate progress toward removal.

As of April 23, 2026, ERO has received no travel letter for Petitioner. (*Id.* at 3). Officer Gonzalez states, in sum, "there is no indication that Petitioner will not be issued a travel document and travel letter to Afghanistan. Therefore, there is a significant likelihood of removal in the reasonably foreseeable future, as ERO is actively working to secure the necessary travel documents for Petitioner's removal to Afghanistan." (*Id.*). On April 27, 2026, a Decision to Continue Detention based on ICE's Post-Order Custody Review (POCR) was served on Petitioner. (Dkt. No. 7-3).[2] It indicates that "ICE has determined to maintain [Petitioner's] custody because [he has] not demonstrated that, if released, [he] will not: [p]ose a significant flight risk of flight pending [his] removal from the United States." (*Id.* at 1). As of the date of this Order, there is no evidence in the record that ERO has taken any further action as to Petitioner's removal to Afghanistan or a third country.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). Once a party has properly moved for summary judgment under Rule 56, the non-movant must demonstrate the "specific facts" showing a genuine dispute. *Celotex*, 477 U.S. at 324. A genuine dispute exists when "the evidence is such that a reasonable jury could return a

---

[2] A Post-Order Custody Review is an evaluation conducted by ICE ninety days following entry of a final order of removal to determine if removal is reasonably likely in the foreseeable future. *See* 8 C.F.R. 241.13; 8 U.S.C. §1231(a)(1)(A). If it is determined that there is no significant likelihood of removal, the non-citizen may be released on an order of supervision. 8 CFR. 241.13(b)(1). However, the non-citizen may remain in custody if it is determined that the non-citizen would pose a flight risk if released. *See* 8 C.F.R. 241.4(e)(6). Here, the Court notes that this evaluation was made on April 27, 2026, eight months after Petitioner's removal order became final.

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court must construe all facts and draw all inferences in the light most favorable to the non-movant. *Id.* at 255. However, the presence of a mere scintilla of evidence is not sufficient to overcome a motion for summary judgment. *Id.* at 252.

**B. 28 U.S.C. Section 2241**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

## III. DISCUSSION

Turning to the Petitioner's claims, both claims assert that Petitioner is entitled to release because he is indefinitely detained. Respondents move for summary judgment, asserting that Petitioner's detention is lawful under 8 U.S.C. § 1231. First, the Court will examine its jurisdiction to hear these claims. Second, the Court will analyze Petitioner's detention and likelihood of removability in the reasonably foreseeable future under *Zadvydas*. Ultimately, the Court will deny the motion for summary judgment, grant the petition, and order Petitioner's release after finding that he is indefinitely detained.

**A. The Court Has Jurisdiction to Hear These Claims**

In their motion for summary judgment, Respondents do not challenge the Court's jurisdiction. In any event, the Court will evaluate its jurisdiction to hear Petitioner's claim. The Court does have jurisdiction to hear indefinite-detention claims because "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688; *see also Vargas Istamo v. Perez*, No. 5:25-CV-186, slip op. at 6 (S.D. Tex. Dec. 19, 2025). For this reason, the Court finds that it has jurisdiction to consider Petitioner's post-removal-period detention claim.

**B. Petitioner's Detention Is Indefinite**[3]

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). As the Court explained, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

In *Zadvydas*, the Supreme Court explained that "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." 533 U.S. at 682. Inadmissible noncitizens or those with certain criminal convictions may be detained beyond the removal period, 8 U.S.C. § 1231(a)(6), but the Court held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

The Court established a "6-month presumption" of reasonableness following the issuance of a removal order. *Id.* at 701. After the six-month period of "presumptively reasonable" detention ends, a petitioner seeking release from detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (denying a *Zadvydas* claim where petitioner offers "nothing beyond conclusory statements"). Once a petitioner meets their burden, the burden shifts to the respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

[3] The Court has previously ruled on similar indefinite detention claims and applies the same *Zadvydas* framework here. *See, e.g.*, *Vargas Istamo*, No. 5:25-cv-186, slip op. (Dec. 19, 2025).

Here, Petitioner's post-removal-order detention began, for purposes of the *Zadvydas* analysis, on August 29, 2025, when his order of removal became final. (Dkt. No. 7-1 at 1). Accordingly, Petitioner has now been detained for over ten months following a final order of removal. (*Id.*). Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* ended months ago. Respondents argue that Petitioner's removal has been lawfully extended because ICE determined that he was a flight risk. Respondents cite Petitioner's 90-day POCRas justification for the extended detention because Petitioner did not demonstrate that if he were released, he would not pose a significant risk of flight pending removal from the United States. They assert that this finding authorizes the extended detention of Petitioner under 8 U.S.C. Section 1231(a)(6).

Section 1231(a)(6) states that "an alien . . . who has been determined by [DHS] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Respondents rely on ICE's decision as a result of the 90-day POCR to prove that Petitioner is a "risk to the community or unlikely to comply with the order of removal," by being a flight risk. However, Respondents' position overextends the weight of ICE's unilateral determination following the 90-day POCR. ICE only determined that Petitioner had not proven that he was not a flight risk. Respondents do not offer additional reasons or specific fact-based determinations that explain why Petitioner would be a flight risk.

The Court finds that the result of the 90-day POCR does not justify an extension of Petitioner's detention, and certainly not to the extent that Petitioner's detention has been extended beyond the 90-day removal period, which ended over seven months ago.[4] Furthermore, any extension of the removal period is still subject to the Fifth Amendment Due Process Clause and the test set out in *Zadvydas*. *Zadvydas*, 533 U.S. at 697

[4] Other district courts have similarly found that the result of the 90-day POCR is insufficient to extend the removal period, and the *Zadvydas* analysis is still the applicable framework. *See Shengelia v. Ortega*, No. 5:25-CV-1545, 2025 WL 3654368, at *5 (W.D. Tex. Dec. 16, 2025) ("[T]he conclusory . . . POCR determination regarding Petitioner's failure to adequately show that he is not a flight risk or a danger to the community is insufficient to justify further detention."); *see also Leksina v. Rice*, No. 6:25-CV-1767, 2026 WL 655563, at *3 (W.D. La. Jan. 23, 2026), *R. & R. adopted*, 2026 WL 642195 (W.D. La. Mar. 6, 2026) (finding that "the Government's argument that [the petitioner's] continued detention is justified by finding her to be a flight risk is weak, . . . [and] generally, 'dangerousness' and 'flight risk' are not part of the Zadvydas analysis"). The Court finds these decisions persuasive.

(explaining that Respondents do not have "unlimited" discretion under Section 1231(a)). Even if the 90-day POCR was sufficient to extend the removal period, the *Zadvydas* framework still governs Petitioner's detention.

Because Petitioner's detention must still conform with due process, the standard *Zadvydas* analysis applies. Petitioner must next show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

*1. Petitioner Meets His Burden*

Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. First, the only country presently designated for removal is Afghanistan, and Petitioner alleges that he can't be removed there because he has not received a travel letter. Second, Petitioner represents, and Respondents do not dispute, that removals to Afghanistan are paused. Third, no other countries have been designated for removal.

Respondents argue that Petitioner's claim is meritless. In the Fifth Circuit, a petitioner must show more than conclusory statements to establish good reason. *Andrade*, 459 F.3d at 543–44. Other district courts provide helpful persuasive authority in considering whether a petitioner meets this burden. For example, in *Trejo v. Warden of ERO El Paso East Montana*, the court found that Trejo met his burden by alleging that he received deferral of removal to El Salvador, his only country of citizenship, and "that ICE has not identified a third country that will accept him." No. 25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025). In another case, *Baltodano v. Bondi*, the petitioner met his burden by showing that he had been granted deferral of removal to Nicaragua, that he had no ties to any other country, and that travel documents had not been secured for any third country. No. CV-25-1958, 2025 WL 3484769, at *4 (W.D. Wash. Dec. 4, 2025). Other courts have found that the expiration of the presumptively reasonable six-month period is enough to meet the burden. *Iakubov v. Figueroa*, No. CV-25-3187, 2025 WL 2640218, at *2 (D. Ariz. Sep. 15, 2025); *Pham v. Bondi*, No. 2:25-CV-1835, 2025 WL 3122884, at *1 (W.D. Wash. Nov. 7, 2025).

Here, the Court finds that Petitioner presents sufficient evidence to meet the burden. His only country of citizenship is Afghanistan. While Petitioner has not been

granted protection from removal to Afghanistan, he has not received a travel letter to facilitate his removal, which makes his removal impractical. ERO's ongoing efforts to obtain the travel letter, while continuous, have gone unfulfilled and Petitioner's travel document remains outstanding. Petitioner has not been notified of a third country for removal. There is no evidence in the record that any other country has agreed to accept his removal. Each of these facts supports his assertion—and goes beyond conclusory statements—that he has good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and he has met his burden to establish good reason.

*2. Respondents Fail to Meet Their Burden*

Because Petitioner has shown good reason, the burden then shifts to Respondents to provide evidence sufficient to rebut the showing. Respondents put forth that "as of April 23, 2026, there is no indication that Petitioner will not be issued a travel document and travel letter to Afghanistan. Therefore, there is a significant likelihood of removal in the reasonably foreseeable future as ERO is actively working to secure the necessary travel documents for Petitioner's removal to Afghanistan." (Dkt. No 7-2 at 3).

To rebut a showing of good reason, Respondents must "respond with evidence sufficient to rebut [a petitioner's] showing." *Zadvydas*, 533 U.S. at 701. For example, in *Olya v. Garite*, the respondents failed to meet their burden because they provided no basis for the Court to determine whether the flights they claimed would occur were, in fact, scheduled or available. No. EP-25-CV-00083, 2025 WL 3254931, at *5 (W.D. Tex. Oct. 14, 2025). The court noted that *Zadvydas* disavows the premise that detention can endure "as long as good faith efforts to effectuate deportation continue" because that "standard would seem to require an alien seeking release to show the absence of any prospect of removal—no matter how unlikely or unforeseeable—which demands more than [the Supreme Court's] reading of the statute can bear." *Id.* The Court finds the reasoning in *Olya* persuasive and applicable to the facts before the Court.

Here, Petitioner's post-removal-order detention has lasted over ten months. Other than requests for a travel letter to Afghanistan, no other action has been taken. The evidence presented by Respondents fails to rebut Petitioner's good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The

attached declaration provides no explanation of when the documents might arrive, any flight dates, or what measures the Government is taking to secure acceptance from Afghanistan. Unlike in *Olya*, where an estimated timeframe was at least provided for the next possible flights, Respondents here offered only recitations of their intent to remove Petitioner, without any evidence of concrete action or progress toward effectuating removal. While Respondents contend that ERO is actively working on Petitioner's removal, the Court finds that these efforts and the evidence presented by Respondents do not rebut Petitioner's showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

*3. Respondents Are Not Entitled to Judgment as a Matter of Law*

As the movants in a motion for summary judgment, Respondents carry the burden to establish that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. Based on the Court's analysis of the reasonableness of Petitioner's detention set forth above, Respondents are not entitled to judgment as a matter of law. Because Respondents have not rebutted the showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the motion for summary judgment is denied.

*4. Petitioner Is Entitled to Release*

The Court finds that Petitioner's continued detention violates due process and Section 1231 because there is no significant likelihood of removal in the reasonably foreseeable future. For that reason, the Court determines that Petitioner is entitled to relief on the indefinite detention claims in his petition. Because the Court finds that there is no significant likelihood of removal in the reasonably foreseeable future, Petitioner must be released. *Zadvydas*, 533 U.S. 701 (holding that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). The Court orders his release as set forth below.

## IV. CONCLUSION

For the foregoing reasons, Respondents' Motion for Summary Judgment, (Dkt. No. 7) is **DENIED**. Petitioner's Verified Amended Petition for a Writ of Habeas Corpus, (Dkt. No. 4), is **GRANTED.** Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction Ordering Immediate Release and Incorporated Memorandum of Law, (Dkt. No. 11), is **DENIED as moot**.

The Court **ORDERS** Respondents to release Petitioner **by July 31, 2026, at 5:00 p.m.** Respondents must notify his counsel of the exact time and location of release **no less than two hours** before his release. At the time of his release from custody, Respondents must return to Petitioner any and all identification documents taken from him at the time of his apprehension or during his detention. Additionally, upon his release, Respondents must provide Petitioner with a printed copy of this Order granting his habeas petition and ordering his release from custody.

The Court **ORDERS** that Petitioner cannot be re-detained without a hearing before this Court to determine whether there has been a material change in circumstances; and he may only be subject to detention if there is a material change in circumstances.

No later than **August 3, 2026, at 5:00 p.m.,** the parties shall provide the Court with a status update concerning Petitioner's release. The parties should also notify the Court of the conditions, if any, of his release.

It is so **ORDERED**.

**SIGNED** on July 30, 2026.

John A. Kazen
United States District Judge